UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ALBERTO XIC, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-137 |
| | § | |
| RANDALL TEAM LIMITED LIABILITY COMPANY d/b/a GALVESTON WASHATERIA; JAMIE RANDALL, individually; and JEFFREY RANDALL, individually, | § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

This FLSA case was tried to a jury in August of 2018. The jury found a willful statutory violation and awarded the plaintiff, Alberto Xic, $25,578.48 in unpaid overtime wages (Dkt. 30). Xic has moved for entry of judgment on the jury's verdict and has requested liquidated damages, attorney's fees, and costs under 29 U.S.C. § 216(b). Xic's motion (Dkt. 35) is **GRANTED**. The Court will enter judgment for Xic and will award liquidated damages, attorney's fees, and costs.

I. **Liquidated damages**

Xic's motion for entry of judgment on the jury's verdict includes a request for liquidated damages under 29 U.S.C. § 216(b) (Dkt. 35 at pp. 2–3). "Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also for an additional equal amount as liquidated damages." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822 (5th Cir. 2003) (quotation marks omitted). Once

mandatory, the assessment of liquidated damages is now discretionary; "the district court can now decline to award such damages (or reduce the amount) if the court concludes that the employer acted in good faith and had reasonable grounds to believe that its actions complied with the FLSA." *Id.* at 822–23 (quotation marks omitted). However, the employer must carry a "substantial burden" to demonstrate good faith and a reasonable belief that its actions did not violate the FLSA, and that burden is necessarily unmet if the factfinder determines that the employer willfully violated the overtime provisions. *Id.*; *see also Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999) ("Because employers cannot act in good faith based on reasonable grounds when they suspect that they are out of compliance with the FLSA, it would have been an abuse of discretion if the district court had *not* awarded liquidated damages.") (emphasis in original); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979) ("Even inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws. Apathetic ignorance is never the basis of a reasonable belief."). Here, the jury found that the defendants "knew that their conduct was prohibited by the FLSA or showed reckless disregard for whether the FLSA prohibited their conduct" (Dkt. 30 at p. 3)—in other words, that the defendants' FLSA violation was willful. *Singer*, 324 F.3d at 821 (defining what constitutes a "willful" violation under the FLSA). The Court will award liquidated damages in the amount of $25,578.48 under 29 U.S.C. § 216(b).

## II. Attorney's fees

Xic has also applied for attorney's fees under 29 U.S.C. § 216(b) (Dkt. 35 at pp. 3–4). "The FLSA requires an employer who violates the statute to pay attorney's fees." *Id.* at 829 n. 10. The fee award is calculated using the lodestar method. *Id.* at 829. Under that method, the district court first calculates the lodestar "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.* "[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates" and will customarily be required to "produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant also bears the burden of proving that the hourly rate for which compensation is requested is reasonable. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). That said, "[w]hen an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable." *Kellstrom*, 50 F.3d at 328.

Once it has calculated the lodestar, "the district court then either accepts [it] or adjusts [it] upward or downward, depending on the circumstances of the case." *Id.* at 324. It is "strong[ly]" presumed that the lodestar award is the reasonable fee; when an adjustment is made, it is generally based on some combination of the dozen factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Heidtman*, 171 F.3d at 1043–44. The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Id.* at 1043 n. 5. The Fifth Circuit has admonished district courts to "give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). District courts must, however, avoid "impermissible double counting[,]" meaning that they typically cannot adjust the lodestar due to a *Johnson* factor "if the creation of the lodestar amount already took that factor into account[.]" *Id.* The caselaw particularly disfavors upward adjustments based on certain factors—namely, the novelty and complexity of issues, the special skill and experience of counsel, the quality of representation, and the results obtained from litigation—that are in most cases considered to be "subsumed within the initial calculation of the lodestar[.]" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

### A. Xic's fee application

The Court first notes that Xic's lawyers have clearly taken great pains to provide a reasonable bill, eliminate redundancy, and avoid requesting payment for noncompensable

hours. A partner, an associate, and a paralegal—respectively, their names are Mark Siurek ("Siurek"), Patricia Haylon ("Haylon"), and Susan Diedrich ("Diedrich")—worked on Xic's case (Dkt. 35 at p. 5; Dkt. 35-1 at p. 2). In their fee application, Xic's lawyers do not request any payment for Siurek's work as a supervising attorney, do not request any payment for Haylon's participation in trial, and do not request any payment for Diedrich's work at all (Dkt. 35 at pp. 6–7). In their response, the defendants argue that Xic's lawyers, even with those write-offs, are still padding the bill (Dkt. 36 at p. 2).[1] The defendants do not object to Xic's lawyers' billing rates.

### i.     The billing rates

The defendants do not object to the rates charged by Xic's lawyers—$395.00 an hour for Siurek, $360.00 an hour for Haylon—and the Court sees no reason to find those rates unreasonable. Siurek is a 30-year lawyer who is admitted to practice in the state courts of Texas, every federal district court in Texas, the Fifth Circuit, and the United States Supreme Court (Dkt. 35-1 at p. 1). He limits his practice to labor and employment law and has been named a Texas Super Lawyer in labor and employment law every year since 2005 (Dkt. 35-1 at pp. 1–2). Haylon has been practicing law in Texas since 1991 and has also concentrated her practice in labor and employment litigation (Dkt. 35-1 at p. 2). She is admitted to practice in the state courts of Texas and the United States District Courts for

---

[1] The defendants also argue that the Court should not award attorney's fees because Xic "failed to introduce any evidence to support a claim for attorney fees" at trial (Dkt. 36 at p. 1). The Court overrules this objection. Federal Rule of Civil Procedure 54(d)(2) requires a claim for attorney's fees to be made by motion "unless the substantive law requires those fees to be proved at trial as an element of damages." The defendants point to no authority, and the Court has found none, establishing that attorney's fees in FLSA cases must be proved at trial.

the Southern and Eastern Districts of Texas (Dkt. 35-1 at p. 2). The Court takes judicial notice that, according to the most recent available hourly fact sheet published by the State Bar of Texas, the median hourly rate for a labor and employment attorney in Texas in 2015 was $278.00 an hour, which is lower than the rates charged by Siurek and Haylon.[2] But the defendants have not contested Xic's attorneys' rates, and this court has previously approved hourly rates of $500.00 for a partner with skills and expertise comparable to Siurek's and $300.00 for an associate with considerably less experience than Haylon. *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 385 (S.D. Tex. 2016); *see also Jane Roe/Rachel V. Rose v. BCE Technology Corp.*, No. 4:12-CV-1621, 2014 WL 1322979, at *3 (S.D. Tex. Mar. 28, 2014) ("Courts in and around Houston have found hourly rates between $200 and $600 to be reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case."). The rates charged by Siurek and Haylon are within the range of prevailing market rates in the Southern District of Texas (and more particularly in the Houston and Galveston divisions) and are, in any event, uncontested; they are therefore *prima facie* reasonable. *Kellstrom*, 50 F.3d at 328.

### ii. The hours submitted

The defendants do, on the other hand, object to some of the time entries in Xic's fee application—specifically, to three client meetings in April, August, and November of 2017 for which Haylon billed a total of 5.5 hours; a meeting between Siurek and Haylon in

---

[2] *See* 2015 Hourly Fact Sheet, published in August 2016 by the Department of Research & Analysis of the State Bar of Texas. The fact sheet can be found at https://www.texasbar.com/AM/Template.cfm?Section=demographic_and_economic_trends&Template=/CM/ContentDisplay.cfm&ContentID=34182.

August of 2017 for which Haylon billed .25 hours; two file reviews in August and November of 2017 for which Haylon billed a total of 2.75 hours; three entries from January and March of 2018 in which Diedrich billed a total of 1.25 hours for "electronically storing information" (presumably, this means scanning documents); and one entry from June of 2018 in which Diedrich billed .25 hours for putting a docket call on the firm's calendar after the Court reset it (Dkt. 36 at p. 2). The Court will overrule those objections. The calendar and electronic storage entries were billed by Diedrich, whose time has been written off entirely (Dkt. 37 at p. 3). The other contested entries (including the August 2017 meeting between Siurek and Haylon) were billed by Haylon only, and the Court does not find those entries to be excessive or redundant.

In addition to examining the time entries to which the defendants specifically objected, the Court has evaluated the other time entries in Xic's fee application and found nothing untoward about them. To the contrary, the time entries merely reinforce the single most indelible impression left on the Court by the jury trial itself: that this was a well-litigated case that, while obviously hard-fought, featured nary a hint of unethical, obstructive, or wasteful conduct by any lawyer on either side. To illustrate, the parties have, between them, filed only two motions during the entire pendency of this case—this one, and Xic's motion in limine. Xic filed a complaint alleging one cause of action under the FLSA, the defendants filed an answer, and the parties began gearing up for trial. When the trial date arrived, all of the lawyers came to the courthouse prepared and ready. The testimony moved expeditiously, and the lawyers presented their cases effectively without

wasting the time of the jury or the Court. Both sides are to be commended for the high quality of their advocacy.

### iii. The Court's findings and calculation of attorney's fees

The Court finds that Xic's lawyers' hourly rates are appropriate and that the hours for which Xic's lawyers seek payment were reasonably expended and are compensable. The Court accepts the lodestar calculation as a reasonable fee and sees no reason to adjust the fee based on the *Johnson* factors. That calculation is as follows:

(1) Siurek billed 75.75 hours at $395.00 an hour for a total of $29,921.25.

(2) Haylon billed 68.5 hours at $360.00 an hour for a total of $24,660.00.

(3) The total lodestar calculation is $54,581.25.

## III. Costs

Xic also seeks reimbursement totaling $1,594.15 for his filing fee and deposition costs. The FLSA mandates an award of costs to a prevailing plaintiff, 29 U.S.C. § 216(b), and filing fees and deposition costs fall within the scope of properly recoverable costs. *See Hilton v. Executive Self Storage Associates, Inc.*, No. 4:06-CV-2744, 2009 WL 1750121, at *16 & n. 12 (S.D. Tex. June 18, 2009). The Court will award the costs requested by Xic.

## IV. Judgment

The Court **GRANTS** the motion for entry of judgment (Dkt. 35) and renders judgment for the plaintiff, Alberto Xic, based on the jury's verdict in the amount of $107,332.36. This amount includes $25,578.48 for unpaid overtime compensation as found by the jury; $25,578.48 in statutory liquidated damages; $54,581.25 in attorney's fees; and $1,594.15 in costs.

The Court will issue a separate final judgment.

SIGNED at Galveston, Texas, on ___November 6___, 2018.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE